UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ANTHONY MOORE,

                    Petitioner,

-against-

ROBERT ERCOLE, Superintendent, Green Haven
Correctional Facility, and THE ATTORNEY
GENERAL FOR THE STATE OF NEW YORK,

                    Respondents.
------------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
09-CV-1003 (CBA)

**AMON, Chief United States District Judge**

Anthony Moore, pro se, has petitioned the Court for a writ of habeas corpus, 28 U.S.C. § 2254, seeking relief from convictions of second-degree intentional murder, N.Y. Penal Law § 125.25(1), and first-degree reckless endangerment, N.Y. Penal Law § 120.25. For the reasons that follow, the petition is denied.

## BACKGROUND

### I. Conviction

The evidence presented at trial established that on August 25, 2004, at about 7:00 p.m., Anthony Moore walked onto the basketball courts at the Ingersoll Houses in Brooklyn and repeatedly shot Kenyon Richardson in front of between one hundred and two hundred people who were gathered to watch a youth basketball tournament.

The jury heard evidence that Richardson died from his wounds, and it also heard evidence that at least two specific bystanders were endangered by Moore's acts. The first, Tereyce Gorman, was grazed by a bullet. The second, a young girl, was knocked to the ground by Richardson as he fled from Moore. She was on the ground near Richardson as Moore fired several shots into Richardson's head and chest.

1

The evidence presented at trial included the testimony of two eyewitnesses who both knew Moore from the neighborhood, and who both identified Moore as the shooter. One of the witnesses, Gerald Coombs, testified that, after Moore killed Richardson, Moore walked off the court and nodded to Coombs as he passed him.

The jury convicted Moore on two counts. The first count charged intentional murder in the second degree on the theory that Moore had intentionally killed Richardson. The second count charged first-degree reckless endangerment. The state's theory on the second count was that Moore had, "under circumstances evincing a depraved indifference to human life, . . . recklessly engage[d] in conduct which create[d] a grave risk of death" to the bystanders present at the scene of the shooting, including Tereyce and the young girl. N.Y. Penal Law § 120.25.

Moore was convicted on both and received concurrent terms of imprisonment of twenty years to life and two and one third to seven years.

**II. Direct Appeal**

Moore, through counsel, appealed to the Appellate Division, Second Department, alleging three errors at trial. He argued first that the trial court's charge to the jury violated his due process rights because it permitted the jury to convict him of recklessly endangering and intentionally killing Richardson. He argued that the jury might have done that because the prosecutor was not careful at trial to explain that the reckless endangerment count contemplated the bystanders as victims, not Richardson. (App. Br. 16–22.)

Moore also asserted a violation of his Sixth Amendment confrontation rights, arguing that the trial court was wrong to permit a detective, John Roman, to testify about "his actions after interviewing witnesses during his investigation." Moore said that that testimony "was tantamount to testimony that non-testifying individuals had implicated" him in the shooting. (Id.

at 22–23.) Similarly, Moore argued that Roman's testimony that he continued the arrest process and arrested Moore after he staged a lineup in which Moore was identified violated Moore's right to a fair trial. He argued that the testimony "impermissibly bolstered" the testimony of the two witnesses who at trial identified Moore as the shooter. (Id. at 23–27.)

Moore also filed a pro se supplemental brief with the Appellate Division in which he argued that the lineup in which he participated was unduly suggestive. He explained that, although Roman, who was organizing the lineup, had outfitted all six participants (including Moore) with swim caps and hats to disguise Moore's distinctive long hair, he had also forced Moore to adjust his shirt collar so as to disguise Moore's distinctive lower-neck tattoo. Moore complained that Roman had not adjusted the shirt collars of all participants.

The Appellate Division rejected each of Moore's arguments. People v. Moore, 49 A.D.3d 901 (2d Dep't 2008). With respect to the jury charge, it held that Moore had waived his objection to the charge because trial counsel, after the state asked the trial court to clarify for the jury that the reckless endangerment count did not contemplate Richardson as the victim, specifically asked that no clarification be offered. Id. The Appellate Division held, in the alternative, that "the jurors, hearing the charge as a whole, would gather from its language the correct rules to be applied." Id.

With respect to the confrontation right claim, the Appellate Division ruled that the argument was "unpreserved for appellate review, and in any event, [was] without merit." Id. at 903. With respect to the bolstering argument, the Appellate Division held that that claim too was not preserved for appellate review and was, in any event, without merit because "any inferential bolstering which may have occurred was harmless since the strong and positive identification

testimony in this case precludes any significant probability that the jury would have acquitted the defendant had it not been for the alleged error." Id.

Finally, with respect to the argument about the lineup, the court explained that, "upon our examination of the lineup photographs, we agree with the Supreme Court that the lineups were not unduly suggestive." Id. at 902.

Moore, again through counsel, asked the New York Court of Appeals for leave to appeal, explaining that he sought "to appeal on every ground raised in his brief and supplemental pro se brief to the Appellate Division, including the state and federal constitutional grounds." (Ex. F.) Moore explained that "in particular" he wanted to "highlight" that he was seeking leave to challenge the jury instruction. He further stated with respect to the jury instruction issue that if the Court of Appeals believed that "preservation does not exist because of the trial attorney's failure to object, or if counsel's statement to the lower court is deemed to have waived the issue," then it should find that Moore's trial counsel was ineffective under the "one error can equal ineffectiveness" holding of People v. Turner, 5 N.Y.3d 476 (2005), because the "single error was of such magnitude that it constituted ineffective assistance of counsel."

The Court of Appeals denied leave to appeal. People v. Moore, 10 N.Y.3d 867 (2008) (Smith, J.).

### III. Federal Habeas Petition

Moore subsequently filed a timely petition for a writ of habeas corpus, 28 U.S.C. § 2254, in which he asserted all of the claims that he presented to the Appellate Division. (Pet. ¶¶ 9–11.) He also asserted a claim of ineffective assistance of counsel, alleging that trial counsel was ineffective for failing to preserve Moore's challenges to the jury instruction, the confrontation right violation, and the bolstering. (Id. ¶ 12.)

4

Moore stated that he had exhausted his available state remedies by presenting his claims about the lineup, jury instruction, confrontation violation, and bolstering to the Appellate Division and by presenting the ineffective assistance claim to the Court of Appeals in his letter requesting leave to appeal. (Id. ¶ 13.)

**DISCUSSION**

**I. Standard of Review**

A petitioner in state custody pursuant to a criminal judgment of a state court is entitled to federal habeas relief only if he can establish that he is being confined in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254. Any petitioner seeking federal habeas relief must first provide the state an opportunity to pass upon the legal and factual arguments supporting his petition. This is the requirement of exhaustion. 28 U.S.C. § 2254(a)–(b); see also Daye v. Att'y Gen., 696 F.2d 186, 191–92 (2d Cir. 1982) (en banc).

Claims that are presented to the state courts but denied on state procedural grounds are deemed procedurally defaulted and generally cannot support federal habeas relief. Harris v. Reed, 489 U.S. 255, 262 (1989) ("an adequate and independent finding of procedural default will bar federal habeas review of the federal claim"). The same is true of unexhausted claims that can no longer be presented to a state court. See Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2000) ("when the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present these claims in order to meet the exhaustion requirement would now find the claims procedurally barred, federal habeas courts must also deem the claims procedurally defaulted" (internal quotation marks omitted)).

There are exceptions to the rule that procedurally defaulted claims are not subject to federal habeas review. A petitioner may obtain review notwithstanding default where he can

5

establish "cause for the default and actual prejudice as a result of the alleged violation of federal law," Coleman v. Thompson, 501 U.S. 722, 750 (1991), or "that he is actually innocent of the crime for which he has been convicted," Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002); see also Schlup v. Delo, 513 U.S. 298, 321–22 (1995) (actual innocence exception appropriate only in "extraordinary cases").

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), where a federal claim is properly presented to the state courts and adjudicated against the petitioner on the merits, that claim will support federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or . . . [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1)–(2); see also Williams v. Taylor, 529 U.S. 362, 405–06 (2000); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005).

The Supreme Court has said that "clearly established federal law" means "the holdings, as opposed to the dicta," of its decisions at the time of the state court adjudication. Williams, 529 U.S. at 412. A decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Id. at 412–13. A decision involves an unreasonable application of clearly established federal law if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413.

An unreasonable application of federal law is more than an incorrect application. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

6

state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 131 S. Ct. 770, 786 (2011); see also id. ("It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."); Renico v. Lett, 130 S. Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."). With these standards in mind, the Court turns to Moore's contentions.

**II. Suggestive Lineup**

Moore's first claim is that the trial court erred in admitting testimony from two witnesses—Gerald Coombs and Craig Newberry—about the fact that they had identified him at a pre-trial lineup, conducted on September 15, 2004, because that lineup was unduly suggestive. Moore's argument is premised on the claim that he was the only one of six participants required to adjust the collar of his shirt, a hooded sweatshirt, to cover his neck. This was done to disguise a distinctive tattoo on the left side of his lower neck.

The state trial court held a pre-trial hearing on this issue and decided that the lineup was not unduly suggestive. The court observed, after examining photographs of the lineup, that "the defendant was in no way highlighted, that the defendant's shirt was drawn up slightly around his neck, and did not serve to single him out as there is nothing unusual in the appearance of his shirt." (Tr. at 99.) The Appellate Division rejected this claim on the merits for substantially the same reason.

"If pre-trial identification procedures are impermissibly suggestive, due process requires the exclusion of the identification testimony unless its reliability is established through

independent evidence." Hoyle v. Lape, 2009 WL 928342, at *10 (E.D.N.Y. 2009); see also Manson v. Brathwaite, 432 U.S. 98, 114 (1977).

A two-part inquiry guides the resolution of claims that an unduly suggestive lineup procedure violated an individual's due process rights. First, the court must determine whether the pre-trial identification procedure "unduly and unnecessarily suggested that the defendant was the perpetrator." Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001). Second, if the pre-trial identification procedure was unduly suggestive, the court must "weigh the corrupting effect of the suggestiveness against other factors indicating that the identification may be independently reliable." Id. at 135 (internal quotation marks omitted); see also United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990).

The Second Circuit has said that, in determining the suggestiveness of a lineup, "the 'principal question' . . . is whether the appearance 'of the accused, matching descriptions given by the witness, so stood out from all of the other[s]'" as to suggest that the suspect was the culprit. United States v. Wong, 40 F.3d 1347, 1359–60 (2d Cir. 1994) (quoting Jarrett v. Headley, 802 F.2d 34, 41 (2d Cir. 1986)). That is, the "focus of the inquiry is not whether the suspect has a distinctive feature not shared by the other participants, but whether that feature matches the description provided by the witness." West v. Greiner, 2004 WL 315247, at *5 (E.D.N.Y. 2004); see also United States v. Jakobetz, 955 F.2d 786, 803 (2d Cir. 1992) (lineup not suggestive where defendant's mustache was smaller than those of other participants because witness described man with no facial hair); Gilbert v. Superintendent of the Collins Corr. Facility, 2004 WL 287683, at *12 (S.D.N.Y. 2004) (defendant only participant in leather jacket but no witness had focused on the perpetrator's jacket in describing him).

Here, at least one of the witnesses who identified Moore in the lineup (Newberry) had described Moore's neck tattoo in a pre-lineup interview with investigators in which he described the man whom he saw shoot Richardson. (Tr. at 153.) Given this, it seems clear that the officers intent was to *conceal* the feature that would have suggested Moore to Newberry, not highlight it. It would be a curious constitutional rule that penalizes police officers for being too conscientious.

It would be a closer question if the necks of the other participants in the lineup were so exposed as to make clear that they did not have tattoos. Then the Court might conclude that concealing Moore's neck would suggest him to an identifier by process of elimination. But that did not happen here. The Court has reviewed the lineup photographs and at least two other participants—#2, whose collared shirt wraps around his neck, and #3, who is also wearing a hooded sweatshirt obscuring his neck—could plausibly have a neck tattoo that is not visible. See United States ex rel. Cannon v. Montanye, 486 F.2d 263, 268 (2d Cir. 1973) (if "one or two" other participants in the five-person lineup had also worn a shirt of the color the attacker wore, "the inference [of suggestiveness] would weaken very considerably"); Wallace v. Miller, 2003 WL 22956968, at *5 (E.D.N.Y. 2003) ("one other participant wore a dark hooded sweatshirt, which was purportedly worn by the assailant in a description previously given the police by witnesses to the crime").

Consequently, the Appellate Division's conclusion that the lineup was not unduly suggestive was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786.

### III. Other Claims Presented to the Appellate Division

The three other claims that Moore presented to the Appellate Division (i.e. the jury charge, confrontation, and bolstering) are all procedurally barred and, in any event, without merit.

#### A. Procedural Default

With respect to Moore's claims concerning the jury charge, the right of confrontation, and bolstering, the Appellate Division held that these claims were procedurally barred. It held that Moore had waived the jury charge claim because his counsel objected to the very charge Moore now claims was necessary. As to the other claims, the Appellate Division held that Moore had not complied with New York's contemporaneous objection rule. That rule bars appellate consideration of the merits of an asserted error at trial unless the defendant provided the trial court an opportunity to correct the error in the first instance. N.Y. C.P.L. § 470.05(2); see also People v. Rivera, 73 N.Y.2d 941 (1989).

"An adequate and independent finding of procedural default will bar habeas review of [a] federal claim." Harris v. Reed, 489 U.S. 255, 262 (1989). This is true whether or not the Appellate Division, as it did here, in fact reaches the merits of the claim as an alternative to the procedural bar. Harris, 489 U.S. at 264 n.10 ("a state court need not fear reaching the merits of a federal claim in an alternative holding"); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) ("federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even when the state court has also ruled in the alternative on the merits of the federal claim").

The well-settled procedural rules invoked by the Appellate Division in this case are "adequate and independent" grounds. See Whitley v. Ercole, 642 F.3d 278 (2d Cir. 2011). The

10

Appellate Division properly applied those rules in denying Moore's remaining claims. Accordingly, the Court may review these claims only if Moore demonstrates "cause for the procedural default and prejudice resulting therefrom," Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991), or "that he is actually innocent of the crime for which he has been convicted," Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002).

Moore cannot make either showing. He has not asserted, much less established, his actual innocence of the crimes of conviction. And although the Court, liberally construing Moore's pro se habeas petition, believes that Moore is asserting ineffective assistance as cause for his procedural default, that argument cannot succeed.

The Supreme Court has recognized that "in certain circumstances counsel's ineffectiveness in failing properly to preserve [a] claim for review in state court will suffice" to establish cause excusing procedural default. Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (citing Murray v. Carrier, 477 U.S. 478, 488–89 (1986)). That ineffectiveness must rise to the level of constitutional ineffectiveness. Id. Relevant here, "ineffective assistance adequate to establish cause for procedural default of some other constitutional claim is itself an independent constitutional claim," which means that an ineffective assistance claim asserted as grounds to excuse procedural default must, like any other claim, be properly presented first to the state courts. Id. at 451–54.

Moore has not done this. As the Court has explained, the only ineffective assistance claim that he presented to any state court was that trial counsel failed to preserve an objection to the jury charge. And Moore only presented that claim of ineffectiveness to the Court of Appeals in his request for discretionary leave to appeal, which was denied. The Second Circuit has clearly held that this is not sufficient. Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000)

("Presenting a claim for the first time to a state court of discretionary review is insufficient to exhaust the claim unless the court considers it."); see also Shankle v. Unger, 2011 WL 1322017, at *4 (E.D.N.Y. 2011).

Moore has not suggested any reason at all why he did not exhaust the ineffective assistance of counsel claims. Nor could he exhaust them now. The only arguable avenue through which to do so would be a motion under N.Y. Crim. P. Law § 440.10, but this avenue is closed to Moore because any evidence regarding counsel's failure to object is in the trial record. See, e.g., Robinson v. Superintendant, 2012 WL 123623, at *5 (E.D.N.Y. 2012); Sloane v. Rock, 2011 WL 2020573, at *5 (S.D.N.Y. 2011). The unexhausted claim is therefore deemed exhausted and procedurally defaulted, St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004), and Moore cannot excuse his state procedural default of the other claims on the ground that he received ineffective assistance of counsel.

### B. Merits

Even if Moore can challenge the merits of the three defaulted claims, he still is not entitled to federal habeas relief.

#### 1. Jury Charge

Moore's first challenge is to the trial court's jury charge. "In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." Casillas v. Scully, 769 F.2d 60, 63 (2d Cir. 1985). In this Circuit, a reviewing court must first ask whether the alleged error violated state law. Davis v. Strack, 270 F.3d 111, 126 (2d Cir. 2001). If so, the court must then

determine whether the charge "so infected the entire trial that the resulting conviction violates due process" under Cupp v. Naughten, 414 U.S. 141, 147 (1975). Id. at 131

Moore argues that the trial court erred by failing to clarify that the second degree murder charge, which carries a mens rea of intent, pertained to Richardson, the victim, and that the reckless endangerment charge, which carries a mens rea of recklessness, pertained to the bystanders. Moore argued in his brief before the Appellate Division that the instruction "permitted [the jury] to sidestep its responsibility of deciding which (if either) mental state defendant possessed." (App. Br. at 21 (quoting People v. Gallagher, 69 N.Y.2d 525 (1987)).)

There is very little risk that the jury instruction given could have actually led to such a result. Even if the instructions as given left some ambiguity, there is not a "reasonable likelihood that the jury has applied the challenged instruction[s]" in a constitutionally problematic way. Cf. Boyde v. California, 494 U.S. 370, 380 (1990). The record establishes that the trial evidence, the government's summation, and the jury charge all informed the jury with sufficient clarity that to find Moore guilty of both counts of conviction it had to find that Moore intentionally killed Richardson and recklessly exposed others present at the basketball courts to a grave risk of death.

The Court simply sees no reason to presume that the jury reached an illogical and impermissible result when such a finding, in light of the evidence in the record and the instructions as a whole, was far less likely than a rational one. Cf. Griffin v. United States, 502 U.S. 46, 59–60 (1991) (there is "reason to think that [jurors'] own intelligence and expertise will save them from" finding guilt where no evidence supports guilt "since jurors are well equipped to analyze the evidence," even if they are not well equipped to analyze the law). Accordingly, it was not unreasonable for the Appellate Division to hold that, analyzing the charge as a whole, it was not error. This claim therefore does not entitle Moore to relief.

## 2. Confrontation

Moore argues that detective Roman, in describing the investigation that led to Moore's arrest, testified, in substance, that certain unnamed and non-testifying witnesses accused Moore of shooting Richardson. Moore argues that that testimony violated the Sixth Amendment. See Ryan v. Miller, 303 F.3d 231, 248–49 (2d Cir. 2003) ("it is well established in this Circuit that lawyers may not circumvent the Confrontation Clause by introducing the same substantive testimony [that witnesses accused the defendant of committing the crime charged] in a different form."). The Court finds that the Appellate Division's determination that Moore's confrontation rights were not violated is not contrary to or an unreasonable application of clearly established federal law.

At trial, detective Roman briefly described his initial canvas of witnesses and residents of the Ingersoll Houses, and stated that he also conducted interviews over the course of the next several days. (Tr. at 246.) He testified that these interviews led to additional leads. Id. The prosecutor then asked, "Now, did you eventually as a result of these interviews to do investigative steps, leads, canvasses, and all other investigative steps that you do, did you have occasion to target one particular individual?" Id. Roman answered in the affirmative, and then identified that individual as Moore. Id. at 246-47.

There is authority finding that trial exchanges like the one in this case are admissible not for their truth, but to provide context for or explain a police investigation. See, e.g., United States v. Hoffer, 869 F.2d 123, 126 (2d Cir. 1989); Jones v. Woods, 2009 WL 4906882, at *3 (E.D.N.Y. 2009); Summerville v. Conway, 2008 WL 3165850, at *2-3 (E.D.N.Y. 2008); People v. Barboza, 805 N.Y.S.2d 657 (App. Div. 2005); People v. Nicholas, 1 N.Y.S.2d 663, 663 (App. Div. 2003). Although the Court recognizes that in some cases the misuse of such testimony

could transgress the Confrontation Clause, see Mason v. Scully, 16 F.3d 38, 42-44 (2d Cir. 1994); Ryan, 303 F.3d 231, the Court finds that Roman's testimony in this case does not rise to that level.

During the relevant exchange, the prosecutor in this case was careful to include other details of the investigative process in his examination. What resulted was a narrative trained not towards the fruits of specific interviews, but towards the end result of all "investigative steps, leads, canvasses, and all other investigative steps." The prosecutor never emphasized or relied on this testimony for the impermissible inference that individuals had indeed implicated Moore. Nor is this a case in which this sort of identification was the best the state could offer, since the state did indeed introduce stronger identification testimony. See, e.g., Reyes v. Ercole, 2010 WL 2243360, at *11 (E.D.N.Y. 2010); Smith v. Walsh, 2003 WL 22670885, at *6 (E.D.N.Y. 2003) ("Particularly in this case, where there is no indication that the challenged out-of-court statement constituted the People's evidence that Smith was the perpetrator, the rejection of Smith's hearsay claim does not warrant federal habeas relief.").

In light of the above, the Court concludes that the Appellate Division's decision that the admission of these statements does not violate Moore's confrontation rights was not unreasonable. See, e.g., United States v. Taylor, 569 F.3d 742, 749–50 (7th Cir. 2009); Newland v. Lape, 2008 WL 2485404, at *4–5 (S.D.N.Y. 2008) ("Here, as noted, Crescitelli briefly testified that he spoke with a bystander in order to explain why he searched the shopping cart. It was not unreasonable for the Appellate Division to conclude that this testimony, which was introduced to explain the officer's actions rather than for its truth, did not offend Crawford.").

### 3. Bolstering

Finally, Moore argues that the testimony that he was arrested after the lineup was effectively testimony from the detective that he believed Coomb's and Newberry's identification testimony. He asserts that this constituted impermissible bolstering which he claims implicates the Fourteenth Amendment.

State court application of state evidentiary rules, even if error as a matter of state law, generally will not warrant federal habeas relief. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("federal habeas corpus relief does not lie for errors of state law"); Crane v. Kentucky, 476 U.S. 683, 689 (1986) ("We acknowledge also our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts."). Evidentiary rulings warrant habeas relief only if they violate due process. See generally Sims v. Stinson, 101 F. Supp. 2d 187, 194 (S.D.N.Y. 2000) (explaining Second Circuit law in this area).

Courts in this Circuit have repeatedly held that a claim of impermissible bolstering, although recognized under New York law, is not a cognizable basis for habeas relief. See, e.g., Villafane v. Artus, 2011 WL 6835029, at *31 (E.D.N.Y. 2011); Lebron v. Sanders, 2008 WL 793590, at *20 (S.D.N.Y. 2008); Nieves v. Fischer, 2004 WL 2997860, at *7 (S.D.N.Y. 2004); Vega v. Berry, 1991 WL 73847, at *2 (S.D.N.Y. 1991) ("Although bolstering is a practice prohibited in various states, including New York, the practice is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process right to a fair trial.").

But even if sufficiently prejudicial bolstering could deprive a defendant of his constitutional right to a fair trial, the Appellate Division's ruling in this case that Moore had not

established error is plainly not an unreasonable application of clearly established federal law. Relief on this ground is denied.

### III. Ineffective Assistance of Counsel

To the extent that Moore is pressing free-standing ineffective assistance of counsel claims based upon trial counsel's failure to object to the jury charge, the alleged confrontation violation, and alleged bolstering, those claims do not entitle him to relief. For the reasons explained above, those unexhausted claims are deemed exhausted and procedurally defaulted.

Even if they were not, the claims are without merit. For largely the same reasons discussed above with respect to the underlying claims, it was not unreasonable for counsel to fail to object and Moore was not prejudiced by any purported errors.

## CONCLUSION

The petition is denied. No certificate of appealability shall issue. 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
February 8, 2012

/s/
Carol Bagley Amon
Chief United States District Judge